## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

**TENASKA CLEAR CREEK WIND, LLC,**

    **Petitioner,**

    **v.**                          **No. 23-1081**

**FEDERAL ENERGY REGULATORY COMMISSION,**

    **Respondent.**

## PETITION FOR REVIEW OF TENASKA CLEAR CREEK WIND, LLC

Pursuant to Section 313(b) of the Federal Power Act, 16 U.S.C. § 825l(b), Rule 15(a) of the Federal Rules of Appellate Procedure, D.C. Circuit Rule 15, and this Court's decision in *Allegheny Defense Project, et al. v. FERC*, 964 F.3d 1 (D.C. Cir. 2020), Tenaska Clear Creek Wind, LLC ("Clear Creek") hereby respectfully petitions this Court for review of the following orders issued by the Federal Energy Regulatory Commission ("FERC" or "Commission"):

    1.    *Tenaska Clear Creek Wind, LLC v. Southwest Power Pool, Inc., Midcontinent Independent System Operator, Inc., Associated Electric Cooperative, Inc., and Tennessee Valley Authority*, Docket No. EL22-59-000, "Order Denying Complaint and Petition," 181 FERC ¶ 61,225 (Dec. 15, 2022) ("Complaint Order"); and

2.    *Tenaska Clear Creek Wind, LLC v. Southwest Power Pool, Inc.*, *Midcontinent Independent System Operator, Inc., Associated Electric Cooperative, Inc., and Tennessee Valley Authority*, Docket No. EL22-59-001, "Notice of Denial of Rehearing by Operation of Law and Providing for Further Consideration," 182 FERC ¶ 62,086 (Feb. 12, 2022) ("February 13 Notice").

On May 25, 2022, Clear Creek filed a complaint and petition at FERC against Southwest Power Pool, Inc., Midcontinent Independent System Operator, Inc., Associated Electric Cooperative, Inc., and Tennessee Valley Authority, concerning non-public curtailment procedures that these entities have applied discriminatorily against Clear Creek's wind facility in Marysville, Missouri. On December 15, 2022, the Commission issued the Complaint Order, which denied Clear Creek's complaint and petition. On January 13, 2023, Clear Creek timely sought rehearing of the Complaint Order pursuant to 16 U.S.C. § 825l(a). On February 13, 2023, the Commission issued the February 13 Notice, which does not address the substance of Clear Creek's request for rehearing of the Complaint Order. Pursuant to 16 U.S.C. § 825l(a) and this Court's decision in *Allegheny*, Clear Creek's request for rehearing was therefore deemed denied by the Commission on February 13, 2022.

Tenaska Clear Creek hereby petitions this Court for review of the Complaint Order and the February 13 Notice. Venue is proper under 16 U.S.C. § 825l(b).

Copies of the Complaint Order and the February 13 Notice are attached as Attachments A and B, respectively. Clear Creek was the complainant in the underlying proceeding and is aggrieved by the orders from which this petition for review is taken.

Dated: March 24, 2023                          Respectfully submitted,

                                                 /s/ David A. Super
                                               David A. Super (D.C. Bar #429359)
                                               Tyler S. Johnson (D.C. Bar #1003009)
                                               BRACEWELL LLP
                                               2001 M Street NW, Suite 900
                                               Washington, DC 20006
                                               Telephone: (202) 828-5836
                                               Facsimile:  (800) 404-3970
                                               Email:  david.super@bracewell.com
                                                       tyler.johnson@bracewell.com

                                               *Counsel for Petitioner*
                                               *Tenaska Clear Creek Wind, LLC*

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

**TENASKA CLEAR CREEK WIND, LLC,**

    **Petitioner,**

    **v.**

**FEDERAL ENERGY REGULATORY COMMISSION,**

    **Respondent.**

No. _____

## PETITIONER'S RULE 26.1 STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1, Tenaska Clear Creek Wind, LLC ("Clear Creek") provides the following Disclosure Statement:

Clear Creek is a Delaware limited liability company that owns a 242 megawatt wind-powered generation facility (the "Project") in Marysville, Missouri. The only entities that hold more than a 10% interest in Clear Creek are indirect subsidiaries of Tenaska Energy, Inc. ("Tenaska") and Tenaska Energy Holdings, LLC ("Tenaska Holdings"). The equity and membership interests in Tenaska and Tenaska Holdings are owned by private individuals and trusts formed for the benefit of their family members. Only two individuals, Howard L. Hawks

and Thomas E. Hendricks, own an ownership interest of 10% or more in Tenaska and Tenaska Holdings.

Tenaska and its affiliates are independent developers and owners of power production facilities located throughout the United States.

Dated: March 24, 2023                          Respectfully submitted,

                                                        /s/ David A. Super
                                                       David A. Super (D.C. Bar #429359)
                                                       Tyler S. Johnson (D.C. Bar #1003009)
                                                       BRACEWELL LLP
                                                       2001 M Street NW, Suite 900
                                                       Washington, DC 20006
                                                       Telephone: (202) 828-5836
                                                       Facsimile:   (800) 404-3970
                                                       Email:   david.super@bracewell.com
                                                                     tyler.johnson@bracwell.com

                                                       *Counsel for Petitioner*
                                                       *Tenaska Clear Creek Wind, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 24th day of March 2023, pursuant to Federal Rules of Appellate Procedure 15(c) and 25(d), I electronically filed the foregoing *Petition for Review of Tenaska Clear Creek Wind, LLC and Corporate Disclosure Statement* with the Clerk of the Court for the U.S. Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system, with copies of the foregoing served via first-class mail, postage prepaid, as follows:

Federal Energy Regulatory Commission
c/o Kimberly D. Bose, Secretary
888 First Street, N.E.
Washington, DC 20426
kimberly.bose@ferc.gov

Matthew Christiansen, General Counsel
Federal Energy Regulatory Commission
888 First Street, N.E.
Washington, DC 20426
matthew.christiansen@ferc.gov

Robert Solomon, Solicitor
Federal Energy Regulatory Commission
888 First Street, N.E.
Washington, DC 20426
robert.solomon@ferc.gov

and by email on all members of the attached service list in Federal Regulatory Commission Docket No. EL22-59.

 /s/ David A. Super
David A. Super (D.C. Bar #429359)

*Counsel for Petitioner*
*Tenaska Clear Creek Wind, LLC*

**FERC** Online - Web Applications of the Federal Energy Regulatory Commission



| FERC Online Home |
| About FERC Online |
| Log Out |
| Edit Registration |
| Company Registration |
| eFiling |
| eSubscription |
| eComment |
| Query Mailing List/Recipients by State |
| Query Service List |
| My Service List |
| My Filing List |
| eLibrary |
| eTariff Viewer |
| Help |

Service List for EL22-59-000 Tenaska Clear Creek Wind, LLC v. Southwest Power Pool, Inc., et al.

Contacts marked ** must be postal served

| Party | Primary Person or Counsel of Record to be Served | Other Contact to be Served |
|---|---|---|
| Associated Electric Cooperative, Inc. | Nicole Allen<br>Partner<br>Thompson Coburn LLP<br>1909 K Street NW<br>Suite 600<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>nallen@thompsoncoburn.com | Brian Prestwood<br>SVP General Counsel and CCO<br>Associated Electric Cooperative, Inc.<br>2814 S. Golden Ave.<br>Springfield, MISSOURI 65807<br>bprestwood@aeci.org |
| Associated Electric Cooperative, Inc. | | Christopher M McGeeney<br>Transmission Policy<br>Associated Electric Cooperative, Inc.<br>2814 S GOLDEN AVE<br>SPRINGFIELD, MISSOURI 65807<br>cmcgeeney@aeci.org |
| Associated Electric Cooperative, Inc. | Nicole Allen<br>Partner<br>Thompson Coburn LLP<br>1909 K Street NW<br>Suite 600<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>nallen@thompsoncoburn.com | Brian Prestwood<br>SVP General Counsel and CCO<br>Associated Electric Cooperative, Inc.<br>2814 S. Golden Ave.<br>Springfield, MISSOURI 65807<br>bprestwood@aeci.org |
| Associated Electric Cooperative, Inc. | | Christopher M McGeeney<br>Transmission Policy<br>Associated Electric Cooperative, Inc.<br>2814 S GOLDEN AVE<br>SPRINGFIELD, MISSOURI 65807<br>cmcgeeney@aeci.org |
| Bracewell LLP | Josh Robichaud<br>Associate<br>Bracewell LLP<br>2001 M St NW<br>Washington, DISTRICT OF COLUMBIA 20001<br>UNITED STATES<br>josh.robichaud@bracewell.com | |
| Bracewell LLP | Stephen Hug<br>Akin Gump Strauss Hauer & Feld LLP<br>2001 K ST NW<br>WASHINGTON, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>shug@akingump.com | |
| Bracewell LLP | Tyler Johnson<br>Bracewell LLP<br>701 5TH AVE STE 6200<br>SEATTLE, WASHINGTON 98104<br>UNITED STATES<br>tyler.johnson@bracewell.com | |
| Bracewell LLP | Drew Fossum<br>VP and General Counsel<br>Tenaska Marketing Ventures<br>11718 Nicholas Street<br>Omaha, NEBRASKA 68154<br>UNITED STATES<br>dfossum@tenaska.com | |
| Bright Canyon Energy Corporation | Jennifer Spina<br>Associate General Counsel<br>Pinnacle West Capital Corporation<br>400 N 5TH ST<br>MAIL STATION 8695<br>PHOENIX, ARIZONA 85004<br>UNITED STATES<br>jennifer.spina@pinnaclewest.com | Jason R Smith<br>TransCanyon, LLC<br>400 North Fifth Street<br>M.S. 9917<br>Phoenix, ARIZONA 85004<br>Jason.Smith@transcanyon.com |
| Evergy Kansas Central, Inc.; Evergy Metro, Inc.; and Evergy Missouri West, Inc. | Patrick Smith<br>Corporate Counsel<br>Evergy, Inc.<br>818 S KANSAS AVE<br>TOPEKA, KANSAS 66612<br>UNITED STATES<br>Patrick.Smith@evergy.com | Denise M Buffington<br>Sr Dir Federal Regulatory Affa<br>Kansas City Power & Light Company<br>PO Box 418679<br>Kansas City,KANSAS 64141-9879<br>Denise.Buffington@evergy.com |

| | | |
|---|---|---|
| Evergy Kansas Central, Inc.; Evergy Metro, Inc.; and Evergy Missouri West, Inc. | | James Flucke<br>Manager, Federal Regulatory Af<br>1200 Main<br>Kansas City, MISSOURI 64105<br>jim.flucke@evergy.com |
| Invenergy Solar Development North America LLC | Larry Eisenstat<br>Partner<br>Crowell & Moring LLP<br>1001 Pennsylvania Ave. N.W.<br>Washington, DISTRICT OF COLUMBIA 20004<br>UNITED STATES<br>leisenstat@crowell.com | Patricia M Alexander<br>Advisor<br>Crowell & Moring LLP<br>1001 Pennsylvania Ave. N.W.<br>Washington, DISTRICT OF COLUMBIA 20004<br>palexander@crowell.com |
| Invenergy Solar Development North America LLC | | Orijit Ghoshal<br>Invenergy LLC<br>2580 W Main Street<br>Littleton, COLORADO 80120<br>oghoshal@invenergyllc.com |
| Invenergy Solar Development North America LLC | | Holly Rachel Smith<br>Associate General Counsel – Re<br>Invenergy LLC<br>1 S WACKER DR STE 1800<br>CHICAGO, ILLINOIS 60606<br>hrsmith@invenergy.com |
| Invenergy Solar Development North America LLC | | Nicole Luckey<br>Senior Vice President, Regulat<br>Invenergy LLC<br>1 South Wacker<br>Suite 1800<br>Chicago, ILLINOIS 60606<br>nluckey@invenergy.com |
| Invenergy Wind Development North America LLC | Larry Eisenstat<br>Partner<br>Crowell & Moring LLP<br>1001 Pennsylvania Ave. N.W.<br>Washington, DISTRICT OF COLUMBIA 20004<br>UNITED STATES<br>leisenstat@crowell.com | Patricia M Alexander<br>Advisor<br>Crowell & Moring LLP<br>1001 Pennsylvania Ave. N.W.<br>Washington, DISTRICT OF COLUMBIA 20004<br>palexander@crowell.com |
| Invenergy Wind Development North America LLC | | Orijit Ghoshal<br>Invenergy LLC<br>2580 W Main Street<br>Littleton, COLORADO 80120<br>oghoshal@invenergyllc.com |
| Invenergy Wind Development North America LLC | | Holly Rachel Smith<br>Associate General Counsel – Re<br>Invenergy LLC<br>1 S WACKER DR STE 1800<br>CHICAGO, ILLINOIS 60606<br>hrsmith@invenergy.com |
| Invenergy Wind Development North America LLC | | Nicole Luckey<br>Senior Vice President, Regulat<br>Invenergy LLC<br>1 South Wacker<br>Suite 1800<br>Chicago, ILLINOIS 60606<br>nluckey@invenergy.com |
| MidAmerican Energy Company | William Hollaway<br>GIBSON, DUNN & CRUTCHER<br>1050 Connecticut Ave NW<br>Washington, DISTRICT OF COLUMBIA 20036<br>UNITED STATES<br>WHollaway@gibsondunn.com | Kady J Alexander<br>Attorney<br>MIDAMERCIAN ENERGY COMPANY<br>666 GRAND AVE STE 500<br>DES MOINES, IOWA 50309<br>kady.alexander@midamerican.com |
| MidAmerican Energy Company | | Janine L Durand<br>Senior Counsel<br>GIBSON, DUNN & CRUTCHER<br>1050 Connecticut Ave, NW<br>Washington, DISTRICT OF COLUMBIA 22201<br>jdurand@gibsondunn.com |
| MidAmerican Energy Company | | Adam Tarr<br>Senior Attorney<br>666 GRAND AVE STE 500<br>DES MOINES, IOWA 50309<br>adam.tarr@midamerican.com |
| Midcontinent Independent System Operator, Inc. | Jackson Evans<br>MISO Senior Corporate Counsel<br>Midcontinent Independent System Operator, Inc.<br>2985 Ames Crossing Road<br>Eagan, MN, MINNESOTA 55121<br>UNITED STATES<br>jevans@misoenergy.org | Ilia Levitine<br>Duane Morris LLP<br>505 9th St. NW<br>Suite 1000<br>Washington, DISTRICT OF COLUMBIA 20004<br>ilevitine@duanemorris.com |
| Midcontinent Independent System Operator, | | Dawn Kaminski<br>Midcontinent Independent System Operator, Inc.<br>720 City Center Drive |

| | | |
|---|---|---|
| Inc. | | Carmel, INDIANA 46032<br>dkaminski@misoenergy.org |
| Midcontinent Independent System Operator, Inc. | | Midwest ISO<br>Midcontinent Independent System Operator, Inc.<br>PO Box 4202<br>Carmel,<br>misolegal@misoenergy.org |
| Southwest Power Pool, Inc. | Joseph Ghormley<br>Southwest Power Pool Inc.<br>201 Worthen Drive<br>Little Rock, ARKANSAS 72223<br>UNITED STATES<br>jghormley@spp.org | Emon Mahony<br>Southwest Power Pool, Inc.<br>201 WORTHEN DR<br>LITTLE ROCK, ARKANSAS 72223<br>emahony@spp.org |
| Southwest Power Pool, Inc. | | Michael Riley<br>Southwest Power Pool Inc.<br>201 Worthen Drive<br>Little Rock, ARKANSAS 72223<br>michael.b.riley@spp.org |
| Southwest Power Pool, Inc. | | Michelle L Harris<br>Senior Paralegal<br>Southwest Power Pool Inc.<br>201 Worthen Drive<br>Little Rock, ARKANSAS 72223-4936<br>mharris@spp.org |
| Southwest Power Pool, Inc. | Emon Mahony<br>Southwest Power Pool, Inc.<br>201 WORTHEN DR<br>LITTLE ROCK, ARKANSAS 72223<br>UNITED STATES<br>emahony@spp.org | Joseph W. Ghormley<br>Southwest Power Pool Inc.<br>201 Worthen Drive<br>Little Rock, ARKANSAS 72223<br>jghormley@spp.org |
| Southwest Power Pool, Inc. | | Michelle L Harris<br>Senior Paralegal<br>Southwest Power Pool Inc.<br>201 Worthen Drive<br>Little Rock, ARKANSAS 72223-4936<br>mharris@spp.org |
| Southwest Power Pool, Inc. | | Michael Riley<br>Southwest Power Pool Inc.<br>201 Worthen Drive<br>Little Rock, ARKANSAS 72223<br>michael.b.riley@spp.org |
| Tenaska Clear Creek Wind, LLC | Josh Robichaud<br>Associate<br>Bracewell LLP<br>2001 M St NW<br>Washington, DISTRICT OF COLUMBIA 20001<br>UNITED STATES<br>josh.robichaud@bracewell.com | |
| Tenaska Clear Creek Wind, LLC | Stephen Hug<br>Akin Gump Strauss Hauer & Feld LLP<br>2001 K ST NW<br>WASHINGTON, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>shug@akingump.com | |
| Tenaska Clear Creek Wind, LLC | Tyler Johnson<br>Bracewell LLP<br>701 5TH AVE STE 6200<br>SEATTLE, WASHINGTON 98104<br>UNITED STATES<br>tyler.johnson@bracewell.com | |
| Tennessee Valley Authority | Abby Fox<br>1710 6TH AVE N<br>BIRMINGHAM, ALABAMA 35203<br>UNITED STATES<br>afox@balch.com | Lyle David Larson, ESQ<br>Partner, Balch & Bingham LLP<br>1710 6TH AVE N<br>BIRMINGHAM, ALABAMA 35203<br>llarson@balch.com |
| Xcel Energy Services Inc. | bernard liu<br>Sr. Trans. Tariff Consultant<br>414 Nicollet Mall Fl 7<br>Minneapolis, MINNESOTA 55401<br>UNITED STATES<br>bernard.liu@xcelenergy.com | |

Back to Query Service List | Back to FERCOnline

*Title 18, U.S.C. 1001 makes it a crime for any person knowingly and willingly to make to any Agency or Department of the United States any false, fictitious or fraudulent statements as to any matter within its jurisdiction.*

*FERC Online does not require the submission of personally identifiable information (PII) (e.g. social security numbers, birthdates, and phone numbers), and FERC will not be responsible for any PII submitted to FERC Online, including any accidental or inadvertent submissions of PII.*

*This site contains information collections that are subject to the Paperwork Reduction Act (PRA). Among other things, the PRA requires FERC to provide you with an estimate of the average burden of completing the information collections on this site. Comments regarding the burden estimate or any other aspect of these forms can be directed to FERC's Information Collection Branch at DataClearance@ferc.gov.*

*In addition, you are not required to respond to any collection of information unless it displays a currently valid Office of Management and Budget (OMB) control number. FERC provides the OMB Control Numbers of the information collections on this site at www.ferc.gov/information-collections.*

For any issues regarding FERC Online, please contact FERC Online Support or call Local: 202-502-6652 | Toll-free: 866-208-3676. Please include a current mail address, telephone number, and e-mail address.

# **<u>ATTACHMENT A</u>**

181 FERC ¶ 61,225
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Before Commissioners:  Richard Glick, Chairman;
James P. Danly, Allison Clements,
Mark C. Christie, and Willie L. Phillips.

| | |
|---|---|
| Tenaska Clear Creek Wind, LLC | Docket No.  EL22-59-000 |
| v. | |
| Southwest Power Pool, Inc. | |
| Midcontinent Independent System Operator, Inc. | |
| Associated Electric Cooperative, Inc. | |
| Tennessee Valley Authority | |

ORDER DENYING COMPLAINT AND PETITION

(Issued December 15, 2022)

1.      On May 25, 2022, Tenaska Clear Creek Wind, LLC (Tenaska) filed, pursuant to sections 206, 211A, 306, 307, 308, and 309 of the Federal Power Act[1] and Rules 206 and 212 of the Commission's Rules of Practice and Procedure,[2] a complaint and petition against Southwest Power Pool, Inc. (SPP), Midcontinent Independent System Operator, Inc. (MISO), Associated Electric Cooperative, Inc. (AECI), and Tennessee Valley Authority (TVA) (collectively, Respondents), alleging that Respondents have adopted certain operating guides that result in curtailment of Tenaska's generating facility, the Clear Creek Wind Project (Project), that is unjust, unreasonable, and unduly discriminatory or preferential and is inconsistent with Respondents' tariffs and Commission precedent.  As discussed below, we deny Tenaska's complaint and petition.

## I.      **Background**

### A.      **Parties**

2.      Tenaska developed, and now owns and operates, the Project, a 242 MW wind-powered generating facility, located in Maryville, Missouri, within the footprint of the AECI transmission system.

---

[1] 16 U.S.C. §§ 824e, 824j-1, 825e, 825f, 825g, 825h.

[2] 18 C.F.R. §§ 385.206, 385.212 (2021).

3.      AECI is a rural electric generation and transmission cooperative comprised of six regional and 51 local electric cooperative systems in Missouri, southeast Iowa, and northeast Oklahoma.  AECI has an open access transmission tariff that is not on file with the Commission, as it is an "unregulated transmitting utility," as defined in section 211A, and is the balancing authority for its transmission system.[3]

4.      TVA serves as the NERC-registered reliability coordinator for AECI's balancing authority and, as such, is responsible for maintaining in real time the reliable operation of the bulk electric system within its reliability coordination region.[4]  TVA is also an "unregulated transmitting utility" as defined in section 211A.

5.      MISO and SPP neighbor AECI's transmission system.  MISO is both the balancing authority and reliability coordinator for MISO's transmission system.  SPP also is both the balancing authority and reliability coordinator for SPP's transmission system. SPP has a joint operating agreement (JOA) with AECI to cooperate on operations, transmission planning, and affected system coordination matters (SPP-AECI JOA).[5]

###       B.      Tenaska's Previous Complaint in Docket No. EL21-77

6.      Tenaska executed a generator interconnection agreement (GIA) with AECI in December 2018 (AECI-Tenaska GIA).  AECI is the sole purchaser of power from the Project, pursuant to a power purchase agreement between Tenaska and AECI.  The Project entered commercial operation in May 2020.

---

[3] The North American Electric Reliability Corporation (NERC) defines a balancing authority as the responsible entity that integrates resource plans ahead of time, maintains load-interchange-generation balance within a balancing authority area, and supports interconnection frequency in real time.  NERC Rules of Procedures, app. 2 (Definitions) (effective May 12, 2022).

[4] NERC defines reliability coordinator as the entity that is the highest level of authority who is responsible for the reliable operation of the bulk electric system, has the wide area view of the bulk electric system, and has the operating tools, processes, and procedures, including the authority, to prevent or mitigate emergency operating situations in both next-day analysis and real-time operations.  The reliability coordinator has the purview that is broad enough to enable the calculation of interconnection reliability operating limits, which may be based on the operating parameters of transmission systems beyond any transmission operator's vision.  *Id.*

[5] *See* SPP, Rate Schedules and Seams Agreements Tariff, Rate Schedule FERC No. 10, SPP-AECI Joint Operating Agreement (0.0.0).

Document Accession #: 20221215-3057          Filed Date: 12/15/2022

7.      During the interconnection study process, SPP and MISO were identified as possible affected systems.  In its affected system study, MISO determined that no network upgrades on its transmission system would be required for the Project to operate.  In contrast, SPP issued its first affected system impact study in October 2018, which identified $31.2 million in network upgrades on the SPP system necessary to accommodate the interconnection of the Project to the AECI transmission system. Following revisions in November 2018 and March 2019, SPP issued an affected system facilities study in April 2019 that identified approximately $33.5 million in network upgrades assigned to the Project.  SPP restudied the Project multiple times, which resulted in additional network upgrades being assigned to Tenaska, and, in March 2021, SPP posted affected system restudy results assigning a total of approximately $99 million in network upgrades to the Project (2021 Restudy).

8.      In May 2021, in response to the 2021 Restudy, Tenaska filed a complaint in Docket No. EL21-77-000, arguing that the network upgrade costs assigned to the Project should be limited to approximately $34 million.  In December 2021, the Commission largely denied the complaint but found that SPP's use of its 2019 Integrated Transmission Planning (ITP) models in the 2021 Restudy was unduly discriminatory or preferential; ordered SPP to conduct a restudy using SPP's 2017 ITP models; and ordered SPP to file the results of that restudy as a compliance filing.[6]

9.      In March 2022, as revised in May 2022 and August 2022, SPP submitted a compliance filing with the results of the Commission-ordered restudy (2022 Restudy), which assigned Tenaska six network upgrades totaling approximately $79 million.[7]  In April 2022, Tenaska protested the compliance filing and filed an amended complaint pertaining to whether SPP had appropriately assigned network upgrade costs to Tenaska. On September 9, 2022, the Commission issued an order on compliance and rehearing, which sustained the result in the December 2021 order; found the network upgrade cost assignments in SPP's compliance filing just and reasonable; and denied Tenaska's protest and amended complaint.[8]  On October 11, 2022, Tenaska submitted a request for rehearing of the September 2022 order, which is pending before the Commission.

---

[6] *See Tenaska Clear Creek Wind, LLC v. Sw. Power Pool, Inc.*, 177 FERC ¶ 61,200 (2021).  On April 11, 2022, Tenaska filed a Petition for Judicial Review (D.C. Cir. No. 22-1059).

[7] In August 2022, SPP submitted a supplement to its compliance filing, updating the cost estimates for the Project's assigned network upgrades to $102 million due to increased material and labor costs.

[8] *Tenaska Clear Creek Wind, LLC v. Sw. Power Pool, Inc.*, 180 FERC ¶ 61,160 (2022).

## II.    **Complaint**

10.     In the instant proceeding, Tenaska filed a complaint under section 206 against SPP and MISO and a petition under section 211A[9] against AECI and TVA (collectively, Complaint).

11.     Tenaska argues that Respondents use non-public operating guides to curtail the Project on an unduly discriminatory basis.[10]  Tenaska explains that, following the 2021 Restudy, Tenaska noticed that (1) curtailments of the Project appeared to increase dramatically in frequency and severity, and (2) redispatch reports received from AECI appeared to indicate that the curtailments were due less to Transmission Loading Relief (TLR) procedures from NERC (which are on file with the Commission) and more due to internal operation decisions by SPP.[11]

12.     Tenaska states that it contacted AECI and SPP, both of whom acknowledged the use of operating guides to relieve congestion near the Project, but neither AECI nor SPP was willing to provide Tenaska with copies of the operating guides.[12]  Thus, Tenaska explains that it did not have access to the operating guides when it filed its Complaint.[13]  Tenaska states that, based on a joint conference call with AECI and SPP, it believes that Respondents are parties to at least two of the operating guides.  Thus, Tenaska moves for expedited discovery and a shortened answer period, requesting that the Commission issue an order requiring that the operating guides be filed in the record in this proceeding.

---

[9] Section 211A(b)(2) provides that "the Commission may, by rule or order, require an unregulated transmitting utility to provide transmission services . . . on terms and conditions (not relating to rates) that . . . are not unduly discriminatory or preferential." *See* 16 U.S.C. § 824j-1(b).

[10] Complaint at 2, 10-11.

[11] Tenaska explains that "TLR procedures are used by Reliability Coordinators, such as SPP, MISO, and TVA, to manage interchange through coordinated curtailment of generation resources and transmission customers contributing to a particular constraint." *Id.* attach. 1 (Testimony of Justin Vala), at 3.

[12] *Id.* at 12-15.

[13] *Id.* at 14-15.

13.      Tenaska argues that the operating guides violate Respondents' tariffs[14] and
SPP's, AECI's, and MISO's generator interconnection procedures (GIP) on file with
the Commission.[15]  Tenaska explains that Respondents' tariffs incorporate requirements
from Order Nos. 888[16] and 2003[17] regarding open access, comparability, and non-
discriminatory curtailment, and also incorporate NERC TLR procedures dictating
when curtailment is necessary to maintain reliability on the bulk power system.[18]
Tenaska further explains that Respondents' GIPs and *pro forma* GIAs require that
any curtailments be implemented on an equitable, non-discriminatory basis.

14.      Tenaska concedes that there are instances when the Commission has permitted
curtailment procedures that are not set forth in a transmission provider's tariff, but
Tenaska states that the Commission has allowed such alternative curtailment procedures
only when they are "consistent" with the tariff and not unduly discriminatory.[19]  Tenaska
cites three proceedings where the Commission found that alternative curtailment
requirements were not consistent with the transmission provider's tariff, specifically

---

[14] Tenaska recognizes that AECI, SPP, and MISO have tariffs whereas TVA has
"Transmission Service Guidelines."  *See id.* at 18 n.36.  For simplicity, we will refer to
these collectively as tariffs.

[15] *Id.* at 18 (citing SPP OATT, attach. V, § 9.7.2.2; AECI Interconnection
Procedures, app. 4, § 9.7.2.2; MISO OATT, attach. X, app. 6, § 9.7.2).

[16] *Promoting Wholesale Competition Through Open Access Non-Discriminatory
Transmission Servs. by Pub. Utils.; Recovery of Stranded Costs by Pub. Utils. &
Transmitting Utils.*, Order No. 888, FERC Stats. & Regs. ¶ 31,036 (1996) (cross-
referenced at 75 FERC ¶ 61,080), *order on reh'g*, Order No. 888-A, FERC Stats. & Regs.
¶ 31,048 (cross-referenced at 78 FERC ¶ 61,220), *order on reh'g*, Order No. 888-B, 81
FERC ¶ 61,248 (1997), *order on reh'g*, Order No. 888-C, 82 FERC ¶ 61,046 (1998),
*aff'd in relevant part sub nom. Transmission Access Pol'y Study Grp. v. FERC*, 225 F.3d
667 (D.C. Cir. 2000), *aff'd sub nom. New York v. FERC*, 535 U.S. 1 (2002).

[17] *Standardization of Generator Interconnection Agreements & Procedures*, Order
No. 2003, 104 FERC ¶ 61,103 (2003), *order on reh'g*, Order No. 2003-A, 106 FERC
¶ 61,220, *order on reh'g*, Order No. 2003-B, 109 FERC ¶ 61,287 (2004), *order on reh'g*,
Order No. 2003-C, 111 FERC ¶ 61,401 (2005), *aff'd sub nom. Nat'l Ass'n of Regulatory
Util. Comm'rs v. FERC*, 475 F.3d 1277 (D.C. Cir. 2007).

[18] Complaint at 18-20.

[19] *Id.* at 18 (citing *Entergy Servs., Inc.*, 133 FERC ¶ 61,202, at P 14 (2010) (noting
that "any curtailment mechanism must be implemented consistent with the requirements
for curtailments contained in the applicable OATT")).

when the procedures had the effect of selectively curtailing a single customer or group of customers ahead of others.[20]  Tenaska argues that the operating guides at issue are not consistent with Respondents' tariffs because it understands that the operating guides require the Project to be curtailed down to 0 MW before other transmission and interconnection customers are curtailed.[21]

15.    Tenaska states that Respondents would likely argue that the Project should be curtailed ahead of other interconnection customers because, in light of SPP's affected system study and restudies assigning the costs of certain network upgrades on the SPP transmission system to the Project, it is not similarly situated to other customers.[22] But Tenaska argues that it is not uniquely situated because the existence of an affected system restudy does not provide a valid basis for selective curtailment of the Project ahead of other interconnection customers.  Tenaska further alleges that the purpose of the curtailment is to penalize Tenaska for disputing its network upgrade costs and that the restudy results are inconsistent with the ongoing curtailment.

16.    Elaborating on this final claim, Tenaska points to three types of alleged mismatches between the curtailment and the restudies.[23]  First, Tenaska contends that the Project is being selectively curtailed whenever flowgates associated with the Maryville-Midway 161 kV transmission line (and other facilities identified in the restudies) become constrained during normal (i.e., system intact) operating conditions, whereas the restudy proposes to assign Tenaska cost responsibility only for constraints that appear during specific contingency conditions associated with the loss of an adjacent transmission line (i.e., the Maryville-Nodaway N-1 contingency).  Second, Tenaska argues that the contingencies cited for "the vast majority of curtailments" do not align with the contingencies cited in the restudies as the basis for assigning the Project network upgrade costs:

> For instance, the flowgate that has most frequently been cited
> as the basis for curtailing the Clear Creek Project—Flowgate

---

**20** *Id.* at 18-19 (citing *Iberdrola Renewables, Inc. v. Bonneville Power Admin.*, 137 FERC ¶ 61,185 (2011) (*Iberdrola v. Bonneville*), *reh'g denied*, 141 FERC ¶ 61,233 (2012), *petition denied*, *Nw. Requirements Utils. v. FERC*, 798 F.3d 796 (9th Cir. 2015); *Entergy Servs., Inc.*, 131 FERC ¶ 61,067, at P 53, *order on reh'g*, 133 FERC ¶ 61,202 (2010); *Bonneville Power Admin.*, 110 FERC ¶ 61,001, *reh'g denied*, 110 FERC ¶ 61,094 (2005)).

**21** *Id.* at 14, 24-25.

**22** *Id.* at 20-21.

**23** *Id.* at 22-25.

> 25727—is described by SPP as the Maryville-Midway 161
> kV line for the loss of the Maryville-Nod[a]way 161 kV line.
> In contrast, the contingency cited by SPP as the basis for
> assigning the Clear Creek Project responsibility for upgrading
> the Maryville-Midway Line is the loss of the Gentry-Fairport
> 161 kV line.[24]

Third, Tenaska contends that the operating guides appear to require congestion relief at facilities that were once assigned to the Project but that are no longer assigned under the 2022 Restudy.[25]  For example, Tenaska claims that, in April 2022, AECI reported receiving a request from SPP to cap the output of the Project due to loading on flowgates associated with the Maryville-Braddyville 161 kV transmission line, even though the 2022 Restudy determined that the Project should no longer be assigned network upgrades on this transmission line.

17.     Tenaska asserts that failure of SPP and MISO to file operating guides is inconsistent with section 205(c), which imposes filing requirements on public utilities, and with the filed rate doctrine, which prohibits charging a rate other than the rate on file with the Commission.[26]  Tenaska highlights that the Commission required the NERC TLR procedures to be on file and for transmission providers to incorporate the NERC TLR procedures into their tariffs.[27]  Tenaska reasons that, assuming the operating guides are not unduly discriminatory, they should have been filed with the Commission because they override the curtailment procedures on file, including the NERC TLR procedures.

18.     Tenaska requests that the Commission issue an order directing Respondents to immediately terminate the operating guides and requiring that any necessary curtailments only be made on a pro rata and non-discriminatory basis.[28]  Tenaska argues that the

---

[24] *Id.* at 23.

[25] *Id.* at 23-24.

[26] *Id.* at 25 (citing 16 U.S.C. § 824d(c) and *W. Deptford Energy, LLC v. FERC*, 766 F.3d 10, 12 (D.C. Cir. 2014)).

[27] *Id.* (citing *N. Amer. Elec. Reliability Council*, 87 FERC ¶ 61,160, *order on reh'g*, 88 FERC ¶ 61,044 (1999), *order on reh'g*, 96 FERC ¶ 61,079 (2001)).

[28] *Id.* at 26-29.

Commission has authority under section 211A to direct AECI and TVA to cease discriminatory curtailment of the Project.[29]

19.     Tenaska concedes that the Commission would not have authority under section 211A to order refunds, noting that the United States Court of Appeals for the Ninth Circuit has recognized "Under § 211A, FERC has the discretion to prevent discrimination in unregulated utilities' transmission services on a prospective basis."[30]  However, Tenaska requests that the Commission use its remedial authority under section 309[31] to require SPP and MISO to make refunds to Tenaska by imposing surcharges to effectuate the refunds.  Tenaska argues that the application of the operating guides "likely benefitted" SPP and MISO interconnection customers.[32]  Tenaska contends that it has more than $9 million in lost revenue due to the curtailments but recognizes that the Commission could set the issue of refunds and surcharges for hearing and settlement judge procedures if further fact finding is necessary.

## III.    Notice and Responsive Pleadings

20.     Notice of Tenaska's Complaint was published in the *Federal Register*, 87 Fed. Reg. 33,477 (June 2, 2022), with interventions and protests due on or before June 14, 2022.

21.     Timely motions to intervene were filed by Bright Canyon Energy Corporation (Bright Canyon); Evergy Kansas Central, Inc., Evergy Metro, Inc., and Evergy Missouri West, Inc.; Invenergy Wind Development North America LLC and Invenergy Solar Development North America LLC; MidAmerican Energy Company; and Xcel Energy Services Inc., on behalf of Southwestern Public Service Company.

22.     On May 27, 2022, SPP filed an objection to Tenaska's request for a shortened response period on Tenaska's motion for expedited discovery; AECI filed an answer in support of SPP's objection; and Tenaska filed a motion for leave to answer and answer opposing SPP's objection.

---

[29] *Id.* at 28-29 (citing *Iberdrola v. Bonneville*, 137 FERC ¶ 61,185).

[30] *Id.* at 27 (quoting *Nw. Requirements Utils. v. FERC*, 798 F.3d at 808 (citing 16 U.S.C. § 824j–1(b))).

[31] *See* 16 U.S.C.§ 825(h) ("The Commission shall have power to perform any and all acts . . . as it may find necessary or appropriate to carry out the provisions of this chapter.").

[32] Complaint at 31.

Document Accession #: 20221215-3057          Filed Date: 12/15/2022

23.     On June 9, 2022, SPP and AECI filed answers to Tenaska's motion for expedited discovery.

24.     On June 14, 2022, SPP filed an answer to the Complaint; AECI and MISO filed motions to dismiss or, in the alternative, answers; TVA filed a protest and answer; and Bright Canyon filed comments in support of the Complaint.

25.     On June 29, 2022, Tenaska filed a renewed motion for expedited discovery and a motion to leave to answer and answer to Respondents' June 14 pleadings, requesting that the Commission deny privileged treatment of the operating guides filed by SPP and AECI.

26.     On July 5, 2022, SPP and AECI filed answers to Tenaska's request to deny privileged treatment.

27.     On July 12, 2022, Tenaska filed a request for expedited decision and a motion to leave to answer and answer to SPP's and AECI's July 5 answers.

28.     On July 14, 2022, SPP filed an answer to Tenaska's renewed motion for expedited discovery.

## A.     Respondents' Answers to the Complaint

### 1.     AECI's June 14 Answer

29.     AECI moves to dismiss the Complaint, arguing that AECI is not curtailing the Project on a discriminatory basis.  In response to Tenaska's motion for expedited discovery, AECI explains that it has included a "Limited Operating Guide" as Attachment B to its answer and requests confidential treatment pursuant to 18 C.F.R. § 388.112.[33]  AECI asserts that it has operated in accordance with its tariff, GIP, and the AECI-Tenaska GIA with respect to the interconnection of the Project.[34]  AECI argues that the operating guide is not unduly discriminatory against Tenaska based on the terms of the AECI-Tenaska GIA.[35]  AECI points to Article 5.8 and Appendix A of the AECI-Tenaska GIA for support, which indicate that a generating facility will be subject to limited operation when it enters commercial operation prior to network upgrades being

---

[33] AECI June 14 Answer at 3; *see* 18 C.F.R. § 388.112 (2021).  AECI states that it did not previously share the operating guide with Tenaska because the document contains non-public transmission information.  AECI June 14 Answer at 6 n.13.

[34] AECI June 14 Answer at 4-5.

[35] *See id.* attach. A (AECI-Tenaska GIA).

placed in service.[36]  Specifically, AECI explains that Article 5.8 provides that the transmission provider determines the extent to which a generating facility may operate during this period of limited operation, based on the results of operating studies.[37] Additionally, AECI states that Appendix A of the AECI-Tenaska GIA provides that SPP and MISO may be affected systems impacted by the Project and that the Project "will be subject to Limited Operation until the applicable Affected System network upgrades have been placed into service."[38]

30.    AECI states that, since the Project entered commercial operation in May 2020, the Project's MW output has created "varying degrees of reliability issues on the AECI, SPP, and MISO transmission systems, first necessitating the invocation of [TLR] procedures."[39]  AECI claims that, initially, it used NERC TLR procedures to curtail the Project, but, once SPP released its affected system study, AECI notified Tenaska that limited operation would take effect.[40]  AECI contends that the purpose of NERC TLR procedures is to relieve potential or actual loading on a constrained, existing facility or flowgate by curtailing on a pro rata basis the transmission reservations from resources contributing to the constraint where no specific, additional transmission facilities are required to ameliorate congestion.[41]  In contrast, AECI asserts that its operating guide is a targeted approach to a specific problem and is required by the AECI-Tenaska GIA because SPP has identified affected system network upgrades as the Project's responsibility that have not been constructed.  AECI contends that the operating guide merely documents how AECI imposes limited operation by monitoring specific elements on the transmission system and calling for the reduction of the output from the Project, which is causing the constraint.  AECI states that it will revert to NERC TLR procedures once the affected system network upgrades are in service.

31.    AECI states that SPP identified the Project as the source of constraints on certain facilities, thus necessitating affected system network upgrades, and that AECI's operating guide appropriately imposes limits on the output of the Project until the network upgrades are complete.  AECI also disputes that it is curtailing the Project when congestion occurs on facilities that are no longer assigned to the Project.  Specifically, AECI contends that it

---

[36] *Id.*

[37] *Id.*

[38] *Id.* at 5 (quoting AECI-Tenaska GIA at app. A).

[39] *Id.*

[40] *Id.* at 6.

[41] *Id.* at 7.

removed the Maryville-Braddyville 161 kV transmission line from curtailment data following the 2022 Restudy.[42]

32.     AECI adds that, as it is the sole off-taker of the Project's output under the AECI-Tenaska power purchase agreement, applying the NERC TLR procedures now instead of the operating guide could itself be construed as discriminatory.[43]  AECI explains that not applying the operating guide would result in SPP or MISO having to curtail other generation on their transmission systems in favor of the Project, thus benefiting AECI by being able to realize the full value of its power purchase agreement.

## 2.     SPP's June 14 Answer

33.     SPP argues that the Commission should deny the Complaint, as it pertains to SPP, because Tenaska is not an SPP transmission customer but rather operates in the AECI footprint.[44]  In response to Tenaska's motion for expedited discovery, SPP explains that it has included operating guides as Attachment 1 to its answer and requests confidential treatment pursuant to 18 C.F.R. § 388.112.[45]  SPP states that the operating guides contain commercially and competitively sensitive information.

34.     SPP contends that it cannot have violated provisions of its tariff regarding equitable, non-discriminatory curtailment as to the Project because the tariff provisions only apply to SPP transmission customers with service under SPP's tariff.  SPP asserts that it cannot curtail the Project because Tenaska is not a transmission customer on SPP's system and because SPP is neither the reliability coordinator nor the balancing authority for the AECI system.[46]  Additionally, SPP asserts that its tariff incorporates NERC TLR procedures but does not create any further duties or limits concerning when it is necessary or appropriate to manage transmission congestion with NERC TLR procedures beyond those in other NERC reliability standards.[47]  Likewise, SPP claims that Tenaska likely meant to reference its *pro forma* GIA rather than its GIP and argues that it has not

---

[42] *Id.* at 6 & n.12.

[43] *Id.* at 4.

[44] SPP June 14 Answer at 1-2.

[45] *Id.* at 2.

[46] *Id.* at 8.

[47] *Id.* at 6-7.

violated its *pro forma* GIA, as Tenaska has not executed a GIA with SPP and is not an interconnection customer of SPP.[48]

35.     SPP argues that its operating guides are not unduly discriminatory against Tenaska because the Project is not similarly situated to other interconnection customers' projects due to its limited operation status.[49]  SPP points out that Tenaska chose to begin commercial operation on May 4, 2020, well before the affected system network upgrades needed to operate on par with other interconnection customers could be expected to be built and in service.  SPP also points to Article 5.8 of the AECI-Tenaska GIA and asserts that the limited operation provision appears to apply here, where the Project has entered commercial operation but where the affected system network upgrades are not completed. In response to Tenaska's allegation that the Project's curtailment is a result of the ongoing disputes in Docket No. EL21-77, SPP states that recent SPP Market Monitoring Unit reports have noted increasing congestion on SPP's transmission system on the Maryville-Midway constrained path since the Project began operating.[50]

36.     SPP argues that its operating guides do not need to be filed with the Commission because they are merely guidance and do not significantly affect rates or charges, or the classifications or practices affecting SPP's rates and charges.[51]  SPP states that "[t]he Commission has acknowledged that adopting operating guides is a regular industry practice to allow transmission providers to maintain reliable operations of their transmission systems and has not required the public disclosure of such operating guides."[52]

37.     With respect to Tenaska's request for refunds, SPP argues that there are no charges to refund in SPP because Tenaska does not take SPP transmission service.[53]  SPP also argues that, if for some reason the Commission orders changes to SPP's tariff as a

---

[48] *Id.* at 7.

[49] *Id.* at 7-8.

[50] *Id.* at 9.

[51] *Id.* at 9-11 (citing *City of Cleveland v. FERC*, 773 F.2d 1368, 1373 (D.C. Cir. 1985) (*City of Cleveland*)).

[52] *Id.* at 5 (citing *Sw. Power Pool, Inc.*, 146 FERC ¶ 61,050, at P 72 (2014); *Midcontinent Indep. Sys. Operator, Inc.*, 172 FERC ¶ 61,132, at PP 83-87, *reh'g denied*, 173 FERC ¶ 62,022 (2020); *Sw. Power Pool, Inc.*, 157 FERC ¶ 61,083, at P 52 (2016)).

[53] *Id.* at 7.

result of the proceeding, such changes can only be prospective due to the prohibition on retroactive ratemaking.

### 3. TVA's June 14 Answer

38.    TVA contends that it should not be implicated in this proceeding because it only has a limited role as a reliability coordinator for the AECI balancing authority area and, like SPP, does not actually provide transmission service to Tenaska. TVA also argues that the Commission has limited jurisdiction over TVA under section 211A based on "transmission services" but that section 211A does not apply here because Tenaska does not raise any allegations regarding TVA's provision of transmission service.[54] TVA explains that any directive to curtail the Project or provide load relief in the SPP region is the primary responsibility of SPP and AECI. TVA did not file any operating guides but states that it believes that the operating guides applicable to the Project "are an appropriate and effective real-time solution that protects the reliability of the Bulk Electric System."[55]

### 4. MISO's June 14 Answer

39.    MISO requests that the Commission dismiss MISO as a respondent in this proceeding, arguing that Tenaska failed to plead a case against MISO.[56] MISO explains that, although AECI identified MISO as a potential affected system in AECI's interconnection study of the Project, MISO determined that no network upgrades would be required for the Project and, thus, no affected system network upgrade costs were assigned to the Project in the MISO footprint. MISO states that it has no operating guides or other documents relating to the Project and that MISO did not review AECI's operating guide prior to its implementation. MISO acknowledges that its personnel reviewed two of the SPP operating guides but argues that MISO itself plays no role in curtailing Tenaska because Tenaska is not a transmission customer in MISO and because the Project is not located in MISO's footprint. MISO also acknowledges that it is a party to a joint operating agreement with SPP (MISO-SPP JOA), which is on file with the Commission, but explains that its role is limited to following the specific steps prescribed in the market-to-market process specified therein when SPP initiates market-to-market coordination with MISO.[57]

---

[54] TVA June 14 Answer at 4 (citing 16 U.S.C. § 824j-1(b)).

[55] *Id.* at 2.

[56] MISO June 14 Answer at 1-4.

[57] *Id.* at 6, 9.

40.     In the alternative, MISO maintains that Tenaska failed to meet its burden under section 206 to show that MISO unduly discriminated against Tenaska.[58]  MISO argues that any coordination with SPP and AECI to maintain system reliability has been lawful, necessary, and not unduly discriminatory.

41.     MISO asserts that, despite not having its own operating guides for the Project, the operating guides applicable to the Project need not be filed under the Commission's "rule of reason," which only requires documents to be filed with the Commission that significantly affect rates, terms, and conditions of service.[59]  MISO argues that the operating guides are merely implementing documents with no significant effect.

42.     Finally, MISO argues that there is no basis for any refunds as to MISO, for two reasons.[60]  First, MISO argues that section 206 does not permit retroactive refunds prior to a complaint being filed and only allows tariff changes to apply on a prospective basis.[61]  MISO points out that Tenaska's complaint does not identify any MISO tariff provision that unduly discriminates against Tenaska and that could be amended.  Second, MISO argues that there is nothing to trigger the Commission's remedial authority under section 309 as to MISO because MISO has not received any payments from Tenaska and, thus, there are no payments to recover.[62]

## B.    **Additional Pleadings**

### 1.    **Bright Canyon Comments**

43.     Bright Canyon explains that it owns a 9.9% share in the Project.[63]  Bright Canyon argues that the operating guides are unlawful under Order No. 888, which requires non-discriminatory open access transmission and prohibits curtailing single-generation resources ahead of others.  In support, Bright Canyon refers to the non-discrimination

---

[58] *Id.* at 11.

[59] *Id.* at 6 (citing *PJM Interconnection, L.L.C.*, 151 FERC ¶ 61,097, at P 27 n.58 (2015) ("[T]he Commission does not approve the content of manuals that merely contain 'implementation details' or 'general operating procedures.'"); *Cal. Indep. Sys. Operator Corp.*, 122 FERC ¶ 61,271, at P 16 (2008)).

[60] *Id.* at 12-13.

[61] *Id.* (citing 16 U.S.C.§ 824e(b)).

[62] *Id.* at 13.

[63] Bright Canyon Comments at 3-6.

provisions of Respondents' tariffs. Bright Canyon argues that the Commission has found in prior instances that deviations from such provisions that have the effect of allowing the transmission provider to selectively curtail a single customer or group of customers are inconsistent with Order No. 888.[64]

44.     Bright Canyon further argues that the Commission should direct Respondents to terminate the operating guides immediately and find that any curtailment of the Project be done on a non-discriminatory basis in accordance with Respondents' filed tariffs.[65] Bright Canyon asserts that Order No. 890[66] requires transparency in terms and conditions of service and that curtailment procedures, such as the NERC TLR procedures, be public and on file with the Commission.

45.     Finally, Bright Canyon argues that the Commission should order Respondents to pay refunds for past periods and, if necessary, set the issue of the amount of refunds and surcharges for hearing and settlement procedures.[67]

## 2.     Tenaska's June 29 Answer

46.     Tenaska renews its motion for expedited discovery, arguing that the operating guides provided by SPP appear to be expired, despite alleged ongoing curtailment.[68]

47.     Tenaska argues that not being a transmission customer on the SPP transmission system should not have any bearing on SPP's ability to discriminate against Tenaska.[69] Tenaska argues that, under sections 13.6 and 14.7 of SPP's tariff, SPP is required to manage congestion on its transmission system or any adjacent transmission system on a non-discriminatory basis. Tenaska asserts that the plain language of SPP's tariff broadly

---

[64] *Id.* at 7 (citing *Iberdrola v. Bonneville*, 137 FERC ¶ 61,185; *Entergy Servs., Inc.*, 131 FERC ¶ 61,067 at P 53; *Bonneville Power Admin.*, 110 FERC ¶ 61,001).

[65] *Id.* at 8.

[66] *Id.* (citing *Preventing Undue Discrimination & Preference in Transmission Serv.*, Order No. 890, 118 FERC ¶ 61,119, at P 1626, *order on reh'g*, Order No. 890-A, 121 FERC ¶ 61,297 (2007), *order on reh'g*, Order No. 890-B, 123 FERC ¶ 61,299 (2008), *order on reh'g*, Order No. 890-C, 126 FERC ¶ 61,228, *order on clarification*, Order No. 890-D, 129 FERC ¶ 61,126 (2009)).

[67] *Id.* at 8-9.

[68] Tenaska June 29 Answer at 17.

[69] *Id.* at 2-4.

prohibits discriminatory curtailment and is not limited to SPP transmission customers. According to Tenaska, SPP's role as a reliability coordinator does not permit it to engage in discriminatory curtailment contradictory to SPP's tariff and the NERC TLR procedures. Tenaska emphasizes that the redispatch reports provided by AECI indicate that the Project has been curtailed at the direction of SPP.[70]

48. Tenaska disputes Respondents' claims that Tenaska is not similarly situated to other interconnection customers because the affected system network upgrades identified by SPP are not complete.[71] Tenaska argues that Article 5.8 of the AECI-Tenaska GIA, the limited operation provision: (1) requires notice; (2) requires operating studies; and (3) permits limited operation in accordance with such studies. Tenaska argues that AECI did not take the steps required under Article 5.8. Tenaska claims that it never received notice because it never received the operating guides before it filed the Complaint, despite asking AECI and SPP for copies. Tenaska also argues that using the 2021 Restudy and the 2022 Restudy as a basis for curtailment is inappropriate because the validity of those studies are in dispute in Docket No. EL21-77.[72] Tenaska also reiterates arguments from its Complaint that curtailment does not always match the results from the restudies.

49. Tenaska disagrees with the argument that SPP's operating guides do not need to be filed based on the Commission's rule of reason policy and that they only have an incidental impact on transmission service. Tenaska argues that SPP's operating guides have a significant impact because: (1) they affect the availability of transmission service; (2) they override filed rates, especially the NERC TLR procedures; and (3) they have prevented "the production of tens of thousands of MWhs" of electricity.[73] Tenaska also disagrees with SPP's argument that the operating guides do not need to be filed based on the Commission precedent cited by SPP.[74] Tenaska argues that these cases are distinguishable because the operating guides in those cases were developed in coordination and collaboration with the customers that would be affected, and the customers were given advance notice of their contents.

---

[70] *Id.* at 5 (citing Complaint at 12).

[71] *Id.* at 7.

[72] *See supra* note 6.

[73] Tenaska June 29 Answer at 12 (citing Complaint, attach. 1 (Testimony of Justin Vala), at 2-4, 10-13).

[74] *See supra* note 52.

50.     Finally, Tenaska states that the Commission should deny requests by AECI and
SPP for confidential treatment of the operating guides.[75]  Tenaska asserts that AECI and
SPP have failed to provide any substantive justification other than that the operating
guides contain commercially sensitive information.  Tenaska argues that some of the
information in the operating guides is already public and that the remaining information
should be submitted publicly in this proceeding to ensure open access and non-
discriminatory transmission service.

### 3.     SPP's July 5 Answer[76]

51.     SPP maintains that the operating guides should remain privileged.[77]  SPP
elaborates on its prior justification that the operating guides contain commercially
sensitive information, explaining that, with knowledge of the operating guides, market
participants or entities with proprietary knowledge of their own generator outages could:
(1) inflate offer costs or hedge positions and consequently recoup inflated payments
through make-whole payments; (2) develop strategies for "triggering" the need for the
operating guide procedures to take place and thereby benefit from arbitraging positions
in SPP markets, such as securing otherwise unproductive positions in the transmission
congestion rights markets; and (3) place strategic virtual bids in the day-ahead market to
magnify financial benefits on transmission congestion rights positions.[78]  SPP argues that
these scenarios are not merely hypothetical and references a recent market manipulation
case in the California Independent System Operator Corporation region.[79]

52.     SPP also adds that Tenaska failed to comply with the procedural terms of the
protective agreement that it signed because Tenaska did not make a good faith effort to
resolve the confidentiality dispute with SPP prior to filing its June 29 Answer, as the
protective agreement requires.[80]

---

[75] Tenaska June 29 Answer at 15-16.

[76] SPP explains that its July 5 Answer solely addresses Tenaska's challenge to
SPP's request for privileged treatment of the operating guides.  SPP July 5 Answer at 1-2.

[77] *Id.* at 7.

[78] *Id.* at 4-6.

[79] *Id.* at 6 (citing *Vitol Inc.*,169 FERC ¶ 61,070 (2019)).

[80] *Id.* at 3-4.

Docket No. EL22-59-000                                                                 - 18 -

### 4. **AECI's July 5 Answer**

53.     AECI maintains that the operating guide it filed should remain privileged, arguing that it is not a generic document and that an entity could use the information contained therein to determine how generators will be dispatched given certain constraints and how that dispatch may impact prices in SPP and MISO markets.[81]

### 5. **Tenaska's July 12 Answer**

54.     Tenaska argues that AECI and SPP have not substantiated their claims that the operating guides are commercially sensitive.[82]  Tenaska contends that:  (1) SPP failed to identify who would benefit, as public disclosure of the operating guides would mean that all entities have the same information; (2) market participants would not know when the procedures would apply; and (3) market participants already know where congestion occurs based on other publicly available information.  Tenaska also argues that public disclosure is important because interconnection customers affected under such operating guides might not know that they exist, absent an entity like Tenaska observing curtailment anomalies.

55.     With respect to SPP's claim that Tenaska has not complied with the procedural terms of the protective agreement, Tenaska responds by stating that it had numerous discussions with SPP and AECI before submitting its Complaint.[83]

### 6. **SPP's July 14 Answer**

56.     In response to Tenaska's June 29 renewed motion for expedited discovery, SPP explains that the operating guides that it provided previously were not necessarily void, but it nevertheless has attached an additional operating guide whose review process was completed on July 6, 2022; SPP notes that the review process did not result in any substantive changes.[84]  SPP maintains that it has not violated its tariff and asserts that Tenaska has failed to meet its burden under section 206 to require that any changes be made to SPP's tariff.  SPP disputes Tenaska's characterization that SPP created the operating guides to penalize Tenaska for challenging the affected system network upgrade costs.

---

[81] AECI July 5 Answer at 1-2.

[82] Tenaska July 12 Answer at 3-6.

[83] *Id.* at 2.

[84] SPP July 14 Answer at 6-8.

Document Accession #: 20221215-3057     Filed Date: 12/15/2022

57.     With respect to the AECI redispatch reports, SPP emphasizes that it makes requests for curtailment in cooperation with its neighboring reliability coordinators but that it does not curtail the Project, as TVA is the reliability coordinator for the AECI system, not SPP.[85]  SPP also notes that Tenaska sometimes receives curtailment directives from AECI or TVA but that SPP itself is not responsible for curtailing the Project.  Nevertheless, SPP recognizes that "AECI's and/or TVA's curtailment of Tenaska Clear Creek is sometimes an end result of the need to relieve congestion on SPP's system."[86]  SPP maintains, however, that such curtailment is justified because Tenaska is not similarly situated to other AECI transmission customers.

## IV.     Discussion

### A.     Procedural Matters

58.     Pursuant to Rule 214 of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.214 (2021), the timely, unopposed motions to intervene serve to make the entities that filed them parties to this proceeding.

59.     Rule 213(a)(2) of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.213(a)(2) (2021), prohibits an answer to an answer unless otherwise ordered by the decisional authority.  We accept the answers filed because they have provided information that assisted us in our decision-making process.

60.     Because AECI and SPP submitted operating guides in response to Tenaska's motion for expedited discovery and renewed motion for expedited discovery, we dismiss those motions as moot.  Although Tenaska argues that SPP's operating guides appear to be expired, we find that SPP has adequately explained that it has provided a current version of its operating guide.[87]

### B.     Substantive Matters

61.     We deny Tenaska's Complaint, as discussed further below, because Tenaska has not met its burden under section 206 to show unjust, unreasonable, or unduly discriminatory or preferential treatment and also has not shown non-comparable, unduly discriminatory, or preferential treatment under section 211A.  Because we deny the

---

[85] *Id.* at 4-6.

[86] *Id.* at 7.

[87] *Id.* at 7-8, attach. 1.

Document Accession #: 20221215-3057          Filed Date: 12/15/2022

Complaint, we also deny Tenaska's requested relief for refunds. We further find that the operating guides need not be filed or made public.

62. Tenaska's Complaint is based on the argument that Respondents are curtailing the Project's output on an unduly discriminatory basis. For claims against MISO under section 206, we find that MISO has not treated Tenaska in an unduly discriminatory manner. Tenaska has not presented any evidence that MISO has curtailed the Project, either directly or indirectly. As MISO notes, the Project is not located in MISO's footprint, Tenaska does not take transmission service from MISO for the Project, and MISO determined that no affected system network upgrades on its transmission system would be required for the Project to operate.[88] Given these facts, there does not appear to be any reason why MISO would seek to curtail the Project. Additionally, MISO asserts, and no party disputes, that MISO does not have any operating guides pertaining to the Project. Although MISO states that it reviewed the SPP operating guides and is a party to the MISO-SPP JOA, neither of these facts demonstrates that MISO has caused the Project to be curtailed. Notably, the AECI redispatch reports included in the Complaint do not mention MISO as taking any action to curtail the Project, such as requesting relief or capping the Project's output. Accordingly, we deny the Complaint as to MISO.

63. For claims against SPP under section 206, and for claims against AECI and TVA under section 211A, we find that SPP, AECI, and TVA have not treated Tenaska in an unduly discriminatory manner. As discussed further below, although the record demonstrates that SPP, AECI, and TVA's collective actions have resulted in the curtailment of the Project, the record also demonstrates that, pursuant to the SPP-AECI JOA and the SPP tariff, the Project is subject to limited operation until network upgrades on SPP's transmission system are built and in service, and, therefore, such curtailment is permissible to manage congestion and ensure the reliable operation of the transmission system. Moreover, because the Project is subject to limited operation under these documents based on Tenaska's decision to enter commercial operation before the network upgrades needed on SPP's transmission system to ensure reliability were constructed and based on specific constraints caused by the Project's operation, Tenaska is not similarly situated to other interconnection customers who are not subject to limited operation. Tenaska has not provided evidence that the Project is being curtailed ahead of any other similarly situated interconnection customer that entered commercial operation before needed network upgrades were constructed.

64. Although SPP, AECI, and TVA each plays a role in the curtailment of the Project, we find that these actions do not amount to undue discrimination or violate any Commission-jurisdictional tariff or agreement. The curtailment descriptions from redispatch reports provided by AECI that Tenaska includes in its Complaint indicate that:

---

[88] MISO June 14 Answer at 2, 4, 11.

Document Accession #: 20221215-3057          Filed Date: 12/15/2022

(1) SPP, as the affected system, requests relief for congestion on flowgates impacted by the Project; (2) TVA, as the reliability coordinator, in turn makes a request for congestion relief to AECI; and (3) AECI, as the balancing authority for its system, then reduces the Project's real-time power flow output.[89]  For example, one description from the redispatch reports states that "SPP requested relief for congestion on FG25727.  At the request of TVA, AECI capped Clear Creek [i.e., the Project] generation to 125 MWs."[90]  As explained further below, we find that curtailment of the Project is permissible under limited operation pursuant to the SPP-AECI JOA and SPP's tariff.

65.     The SPP-AECI JOA provides a means for SPP and AECI to coordinate to conduct affected system studies.  Specifically, Section 7.3.3 of the SPP-AECI JOA (Analysis of Generation Interconnection Requests) states that SPP and AECI "will coordinate with the other and conduct . . . any studies required in determining the impact of, and necessary upgrades required to provide, [the] requested generation interconnection service."[91]  SPP and AECI may coordinate such studies "[i]n accordance with the procedures under which the Parties provide generator interconnection service" or, upon mutual agreement, coordinate through "the SPP study procedures for generator interconnection under the SPP Tariff."[92]  Here, pursuant to the SPP-AECI JOA, SPP and AECI have coordinated to conduct SPP's affected system studies of the Project using the study procedures under the SPP tariff.[93]

66.     In turn, SPP's GIP indicates that the full amount of requested interconnection capacity is not guaranteed before necessary network upgrades are in service.  GIP section 8.4.3 of SPP's tariff, under which SPP as an affected system operator studied the Project, provides for limited operation when required network upgrades are not in service by the commercial operation date:

> If the Definitive Interconnection System Impact Study
> determines that the full amount of interconnection capacity
> requested by the Interconnection Customer is not available by

---

[89] Complaint, attach. 1 (Testimony of Justin Vala), at Ex. 2 (Description of Non-TLR Curtailments by Flowgate).

[90] *Id.*

[91] SPP, Rate Schedules and Seams Agreements Tariff, Rate Schedule FERC No. 10, SPP-AECI JOA (0.0.0), § 7.3.3 (Analysis of Generation Interconnection Requests).

[92] *Id.*

[93] AECI June 14 Answer at 3.

> its requested Commercial Operation Date . . . the
> Transmission Provider shall quantify the amount of
> interconnection capacity available to the Interconnection
> Customer prior to the in-service date of such upgrade(s)
> ("Limited Operation"). The Interconnection Customer shall
> be notified of the amount of interconnection capacity
> available under the Limited Operation condition. The
> Interconnection Customer may choose to proceed with
> Limited Operation.[94]

67.    Consistent with this provision, SPP studied and quantified the "amount of
interconnection capacity available" to the Project. Specifically, in the section entitled
"Limited Operation" in the 2022 Restudy, SPP concluded that, before the assigned
affected system network upgrades are in service, 0 MW of Network Resource
Interconnection Service[95] and 161 MW of Energy Resource Interconnection Service[96]
would be available to the Project.[97] Therefore, we find that Tenaska had notice that the

---

[94] SPP, Open Access Transmission Tariff, attach. V, § 8 (12.0.0), § 8.4.3
(Availability of Limited Operations).

[95] Under Network Resource Interconnection Service, the transmission provider
must conduct the necessary studies, and the transmission owner must construct the
network upgrades needed, to integrate the generating facility in a manner comparable to
that in which the transmission owner integrates its generating facilities to serve native
load customers as network resources. Network Resource Interconnection Service allows
the generating facility to be designated as a network resource, up to the generating
facility's full output, on the same basis as existing network resources interconnected to
the transmission provider's transmission system, and to be studied as a network resource
on the assumption that such a designation will occur. *Id.*, § 3 (14.0.0), § 3.2.2.1 (The
Product).

[96] Energy Resource Interconnection Service allows an interconnection customer to
connect its generating facility to the transmission system and be eligible to deliver
the generating facility's output using the existing firm or non-firm capacity of the
transmission system on an "as available" basis. *Id.*, § 3 (14.0.0), § 3.2.2.1 (The Product).

[97] SPP, Ex. SPP-0002 – 2022 Restudy Report, Docket No. EL21-77-000, *AECI
Affected System Impact Studies GIA-61 Study* (May 4, 2022) (May 2022 Restudy Report),
at tbl. 8 (Limited Operation Results). SPP also states that the study "is not an all-
inclusive list that can account for every operational situation. Additionally, the generator
may not be able to inject any power onto the Transmission System due to constraints that
fall below the threshold of mitigation for an interconnection request. Because of this, the
Customer may be required by the Transmission Provider to reduce its generation output

Project would be subject to limited operation, including the potential to be fully curtailed. Indeed, although Tenaska is allowed to operate the Project prior to the completion of all network upgrades for which it is responsible, Tenaska is not entitled to operate the Project at its full interconnection capacity prior to the in-service date of the network upgrades.[98]  Accordingly, we find that curtailment is consistent with the SPP-AECI JOA and the SPP tariff, which together allow SPP, as an affected system operator, to coordinate with AECI to limit the operation of the Project (i.e., by SPP requesting relief to limit the output of the Project and for AECI and TVA to respond accordingly) pending the completion of the affected system network upgrades.

68.    Moreover, Article 5.8 of the AECI-Tenaska GIA contains a limited operation provision under which the generating facility is permitted to operate in accordance with operating studies that determine the extent to which the generating facility may operate before affected system network upgrades are completed.[99]  Tenaska argues that Article 5.8 is inapplicable because AECI did not, itself, perform the operating studies, as Tenaska maintains that Article 5.8 requires.  However, we find that, per the SPP-AECI JOA, the required studies and coordination for generator interconnections that may impact the SPP system can be accomplished by way of the SPP generator interconnection study procedures under SPP's tariff.[100]

69.    Because the Project is subject to limited operation due to its decision to enter commercial operation before the network upgrades needed on SPP's transmission system to ensure reliability were constructed and based on specific constraints caused by the Project's operation, we find that Tenaska is differently situated from other interconnection customers who are not subject to limited operation.  To the extent Tenaska is being curtailed ahead of other interconnection customers not subject to limited operation, that is not unduly discriminatory.[101]  Tenaska has not identified any

---

to 0 MW under certain system conditions to allow system operators to maintain the reliability of the transmission network."  *Id.* at 16.

[98] *Sw. Power Pool, Inc.*, 179 FERC ¶ 61,017, at P 40 (2022).

[99] *See* AECI June 14 Answer, attach. A.  We note that the AECI-Tenaska GIA is not on file with the Commission.

[100] SPP, Rate Schedules and Seams Agreements Tariff, Rate Schedule FERC No. 10, SPP-AECI JOA § 7.3.3 (Analysis of Generation Interconnection Requests).

[101] Tenaska cites to *Iberdrola v. Bonneville*, *Entergy Services, Inc.*, and *Bonneville Power Administration* for the proposition that the Commission previously has found that alternative curtailment requirements were not consistent with the transmission provider's tariff.  *See supra* note 20.  We find these cases to be inapposite here.  In *Iberdrola v. Bonneville*, the wind generators being curtailed were not responsible for incomplete

interconnection customer that is similarly situated to Tenaska who also has required network upgrades that are not currently in service.

70.    Furthermore, we are not persuaded that the specific curtailment events cited by Tenaska demonstrate the existence of undue discrimination.  First, Tenaska claims that the operating guides are inconsistent with SPP's restudy results because the Project is being curtailed under normal (i.e., system intact) conditions, whereas SPP's restudy assigned the Project cost responsibility for upgrading the Maryville-Midway 161 kV transmission line, among others, due to overloads that occur during specific contingencies (as opposed to during normal operating conditions).[102]  We disagree that there is an inconsistency.  Contrary to Tenaska's assertions, the 2022 Restudy results demonstrate that the Maryville-Midway network upgrade is necessary to mitigate a variety of transmission constraints under various system conditions, including system intact conditions.[103]  In particular, the 2022 Restudy results show that the Maryville-Midway 161 kV transmission line is overloaded under normal operating system conditions, before taking the impact of contingencies into account.[104]  SPP's minimum transmission distribution factor threshold for assigning network upgrades for system intact overloads is 3%, and Tenaska has an 18.5% transmission distribution factor on the Maryville-Midway 161 kV transmission line.  SPP's restudy results show the potential for the Maryville-Midway 161 kV transmission line to become congested during normal operating conditions if the Project is injecting power onto the transmission system.

71.    Second, Tenaska claims that the reason most frequently cited as the basis for curtailing the Project is the loss of the Maryville-Nodaway 161 kV transmission line, even though one of SPP's restudies cites the loss of the Gentry-Fairport 161 kV transmission line as the basis for assigning the Project responsibility to upgrade the

---

network upgrades.  Further, in *Entergy Services., Inc.* and *Bonneville Power Administration*, the curtailment concerned transmission customers, not interconnection customers.

[102] *Id.* at 22-23.

[103] May 2022 Restudy Report, Thermal Violations excel spreadsheet at the 'Thermal Overloads – ALL' worksheet, at 15; *see also* SPP, Ex. SPP -0002 – 2022 Restudy Report, Docket No. EL21-77-000, *AECI Affected System Impact Studies GIA-61 Study*, March 4, 2022, Thermal Violations excel spreadsheet at the 'Thermal Overloads – ALL' worksheet, at 15.  We note that the same information is in the March 2022 version.

[104] May 2022 Restudy Report, Thermal Violations excel spreadsheet at the 'Thermal Overloads – ALL' worksheet, at 15.

Maryville-Midway 161 kV transmission line.[105]  Again, we disagree that there is an inconsistency.  While the 2022 Restudy results cite the loss of the Gentry-Fairport 161 kV transmission line as increasing overloads on the Maryville-Midway 161 kV transmission line, the restudy results demonstrate that a variety of other contingencies, including the loss of the Maryville-Nodaway 161 kV transmission line, also increases overloading on the Maryville-Midway 161 kV transmission line, thus requiring Tenaska to upgrade the Maryville-Midway 161 kV transmission line.[106]

72.     Third, Tenaska claims that the Project has been curtailed for contingencies on lines that are no longer its responsibility to upgrade, by referring to a period from April 2021 to April 2022 where curtailment was attributed to flowgates associated with the Maryville-Braddyville 161 kV transmission line.[107]  Tenaska argues that the curtailment in the month of April 2022 was discriminatory because the 2022 Restudy, released in March 2022, determined that the Project should no longer be assigned responsibility for upgrades to the Maryville-Braddyville 161 kV line.  We disagree that curtailment during this time period was unduly discriminatory.  We find that the curtailment associated with the Maryville-Braddyville 161 kV transmission line was not unduly discriminatory because AECI was acting based on information available at the time.  AECI first based limited operation on the 2021 Restudy and subsequently adjusted limited operation as new information became available in the 2022 Restudy.  Although there was a short lag time from March 2022 to April 2022 in updating the curtailment practices, that is not unreasonable under the circumstances, when a complex restudy had to be analyzed for the curtailment practices to be updated, and Tenaska does not point to additional curtailment associated with the Maryville-Braddyville 161 kV transmission line after April 2022.

73.     In addition, we disagree with Tenaska's argument that SPP should be required to file its operating guides with the Commission and that failure to file is inconsistent with section 205 and the filed rate doctrine.[108]  Section 205 requires that public utilities "file

_____

[105] Complaint at 23.

[106] May 2022 Restudy Report, Thermal Violations excel spreadsheet at the 'Thermal Overloads – ALL' worksheet, at 15.

[107] Complaint at 24.

[108] *See* Complaint at 25-26; Tenaska June 29 Answer at 11-15.  In its Complaint, Tenaska also argued that MISO's failure to file its operating guides is inconsistent with section 205 and the filed rate doctrine.  Complaint at 25.  But because MISO claims that it does not have any operating guides pertaining to the Project to submit in this proceeding (a claim that Tenaska did not rebut), we do not address this argument as to MISO.

with the Commission . . . schedules showing all rates and charges for any transmission or sale subject to the jurisdiction of the Commission, and the classifications, practices, and regulations affecting such rates and charges."[109]  However, in *City of Cleveland*, the United States Court of Appeals for the District of Columbia Circuit interpreted the Commission's authority under section 205 in a way that provides the Commission latitude to determine what practices must be on file:

> As we observed earlier, there is an infinitude of practices affecting rates and service.  The statutory directive must reasonably be read to require the recitation of only those practices that affect rates and service *significantly*, that are realistically *susceptible* of specification, and that are not so generally understood in any contractual arrangement as to render recitation superfluous.  It is obviously left to the Commission, within broad bounds of discretion, to give concrete application to this amorphous directive.[110]

74.    Here, we find that SPP's operating guides do not significantly affect rates, terms, and conditions of service because they set forth implementation details (i.e., the operating guides are the mechanism through which the limited operation provided for in the SPP-AECI JOA, SPP tariff, and AECI-Tenaska GIA are achieved).[111]  Moreover, we note that the Commission has approved transmission providers' use of unfiled, confidential

---

[109] 16 U.S.C. § 824d(c); *see also Okla. Gas & Elec. Co. v. FERC*, 11 F.4th 821, 829 (D.C. Cir. 2021) (explaining that the filed rate doctrine "is shorthand for the interconnected statutory requirements that bind regulated entities to charge only the rates filed with FERC and to change their rates only prospectively"); *Verso Corp. v. FERC*, 898 F.3d 1, 10 (D.C. Cir. 2018) (explaining that, under the filed rate doctrine, "utilities are forbidden to charge any rate other than the one on file with the Commission" (quoting *W. Deptford Energy, LLC v. FERC*, 766 F.3d at 12).

[110] *City of Cleveland v. FERC*, 773 F.2d at 1376.

[111] *See Sw. Power Pool, Inc.*, 180 FERC ¶ 61,074, at P 24 (2022) (explaining that "items better classified as implementation details may be included in the business practice manual"); *see also Hecate Energy Greene Cty. 3 LLC v. Cent. Hudson Gas & Elec. Corp.*, 177 FERC ¶ 61,121, at P 48 (2021) (finding that an "inclusion practice[,]" which "simply describes how one particular utility identifies information that the NYISO OATT requires to be communicated to NYISO in order to establish the Base Case[,]" was an implementation detail and not required to be filed under the rule of reason).

operating guides to address reliability issues in other contexts.[112]  Accordingly, we exercise our discretion under the rule of reason and find that SPP's operating guides do not need to be filed with the Commission.[113]

75.     Finally, SPP and AECI request confidential treatment of the operating guides that they submitted in the record in this proceeding, pursuant to 18 C.F.R. 388.112.[114]  SPP and AECI aver that Tenaska has signed a protective agreement,[115] and Tenaska confirmed that it has been able to review the contents of the operating guides.[116]  Nevertheless, Tenaska argues that the Commission should deny SPP's and AECI's requests and make the operating guides public,[117] asserting that, under 18 C.F.R. § 388.112(b)(1), an entity that requests privileged treatment for a document submitted to the Commission bears the burden of justifying its request for confidential treatment and that SPP and AECI have not met this burden.

76.     Upon consideration of the parties' arguments, we grant SPP's and AECI's requests for privileged treatment and will not publicly release the operating guides.  Section

---

[112] *See, e.g.*, *Midcontinent Indep. Sys. Operator, Inc.*, 172 FERC ¶ 61,132 at P 85 (approving the use of unfiled operating guides for storage as transmission only assets (SATOA) and noting that the SATOA operating guides were no different from MISO's existing use of operating guides for traditional transmission assets); *Sw. Power Pool, Inc.*, 144 FERC ¶ 61,224, at P 110 (2013) (directing SPP, the transmission owner, and the generator to establish operating guides to address known and recurring reliability issues associated with manual commitments but not requiring the operating guides to be filed with the Commission).

[113] Tenaska also argues that SPP's operating guides should be filed with the Commission based on the claim that they override other curtailment procedures on file in SPP's tariff, such as the NERC TLR procedures.  Complaint at 26.  This is not the case, however, because the operating guides work in tandem with the TLR procedures, rather than override them.  TLR procedures and operating guides address different circumstances, namely, addressing priority of transmission delivery service as opposed to addressing limits on interconnection service where a resource operates before its interconnection service is fully available.

[114] SPP June 14 Answer at 11; AECI June 14 Answer at 3; *see* 18 C.F.R. § 388.112.

[115] SPP July 5 Answer at 2; AECI July 5 Answer at 2.

[116] Tenaska July 12 Answer at 2.

[117] Tenaska June 29 Answer at 15-16; Tenaska July 12 Answer at 3-6.

Document Accession #: 20221215-3057          Filed Date: 12/15/2022

388.112(a) of the Commission's regulations defines the scope of this privileged treatment, stating that a person "may request privileged treatment for some or all of the information contained in a particular document that it claims is exempt from the mandatory public disclosure requirement of the Freedom of Information Act, 5 U.S.C. 552 (FOIA), and should be withheld from public disclosure."[118]  FOIA Exemption 4 pertains to "trade secrets and commercial or financial information obtained from a person . . . [that is] privileged or confidential[.]"[119]  The United States Supreme Court has explained that information submitted to a government agency such as the Commission will be protected from disclosure under Exemption 4 if:  (1) the information is customarily treated as confidential by the submitter; and (2) the government agency provides assurance that the information will be treated as confidential.[120]

77.     Here, based on relevant precedent, the information sought constitutes "commercial or financial information"[121] and was "obtained from a person."[122]  Further, consistent with *Argus*, based on SPP's and AECI's explanations, we agree that the information contained in the operating guides constitutes information that is customarily treated as confidential by SPP and AECI.  For example, as SPP explains, the operating guides "include and describe commercially sensitive information that SPP customarily treats as confidential."[123]

---

[118] 18 C.F.R. § 388.112(a).

[119] 5 U.S.C. § 552.

[120] *See Sys. Energy Res., Inc.*, 174 FERC ¶ 61,082, at P 70 (2021) (citing *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2363 (2019) (*Argus*)).

[121] *See, e.g.*, *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 319-20 (D.C. Cir. 2006) (rejecting argument that Exemption 4 is confined only to records that reveal basic commercial operations or relate to the income-producing aspects of a business; and noting that the exemption "reaches more broadly and applies (among other situations) when the provider of the information has a commercial interest in the information submitted to the agency").

[122] *See, e.g.*, *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 117 F. Supp. 3d 46 (D.D.C. 2015) ("Information is considered 'obtained from a person' [under Exemption 4] if the information originated from an individual, corporation, or other entity, and so long as the information did not originate with the federal government.").

[123] SPP June 14 Answer at 11; *see also* AECI June 14 Answer at 6 n.13; AECI July 5 Answer at 2; Complaint at 3.

78.    Accordingly, we grant SPP's and AECI's requests for privileged treatment. We note, however, that, while the information here is protected in a manner consistent with Exemption 4 of FOIA, "[t]he Commission retains the right to make determinations with regard to any claim of privilege status, and the discretion to release information as necessary to carry out its jurisdictional responsibilities."[124]    Based on our consideration of the record, the public disclosure of the information is not necessary to meet Commission regulatory objectives, or to serve the public interest.

<u>The Commission orders</u>:

Tenaska's complaint and petition are hereby denied, as discussed in the body of this order.

By the Commission.

( S E A L )

Debbie-Anne A. Reese,
Deputy Secretary.

---

[124] 18 C.F.R. § 388.112(c)(1)(i).

Document Content(s)

EL22-59-000.docx.......................................................1

# **ATTACHMENT B**

182 FERC ¶ 62,086
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Tenaska Clear Creek Wind, LLC                                    Docket No. EL22-59-001
                    v.
Southwest Power Pool, Inc.
Midcontinent Independent System Operator, Inc.
Associated Electric Cooperative, Inc.
Tennessee Valley Authority

NOTICE OF DENIAL OF REHEARING BY OPERATION OF LAW AND
PROVIDING FOR FURTHER CONSIDERATION

(February 13, 2023)

Rehearing has been timely requested of the Commission's order issued on December 15, 2022, in this proceeding. *Tenaska Clear Creek Wind, LLC v. Southwest Power Pool, Inc.*, 181 FERC ¶ 61,225 (2022). In the absence of Commission action on a request for rehearing within 30 days from the date it is filed, the request for rehearing may be deemed to have been denied. 16 U.S.C. § 825*l*(a); 18 C.F.R. § 385.713 (2021); *Allegheny Def. Project v. FERC*, 964 F.3d 1 (D.C. Cir. 2020) (en banc).

As provided in 16 U.S.C. § 825*l*(a), the request for rehearing of the above-cited order filed in this proceeding will be addressed in a future order to be issued consistent with the requirements of such section. As also provided in 16 U.S.C. § 825*l*(a), the Commission may modify or set aside its above-cited order, in whole or in part, in such manner as it shall deem proper.

Debbie-Anne A. Reese,
Deputy Secretary.